IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-03204-RBJ

LORI FRANK,

      Plaintiff,

v.

CITY OF FORT COLLINS, a municipality;
TERENCE F. JONES, former Interim Chief of Police, in his individual capacity; and
JEROME SCHIAGER, former Deputy Chief of Police, in his individual capacity,

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

      This matter is before the Court on two motions to dismiss. Defendant Jerome Schiager, the former Deputy Chief of Police of the Fort Collins Police Service ("FCPS") moves to dismiss claim eight pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 20. Defendants City of Fort Collins ("the City") and Terence Jones move to partially dismiss the complaint under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). ECF No. 22. For the reasons explained below, Mr. Schiager's motion is GRANTED IN PART and DENIED IN PART and the City and Mr. Jones's motion is GRANTED.

## I. BACKGROUND

      The following facts are from the Complaint, ECF No. 2, and assumed true for purposes of the present motions. FCPS hired Ms. Frank in June 1999 as a Crime Analyst responsible for researching and interpreting information on crime-related issues to FCPS and other agencies within Fort Collins. ECF No. 2 at ¶¶30, 34. During her tenure, Ms. Frank met or exceeded the

1

expectations of her position and received numerous positive performance reviews. *Id.* at ¶37. Ms. Frank is regarded as an expert in her field – her work has been featured in high profile trials, and she has lectured at various educational institutions. *Id.* at ¶¶39–40.

As Ms. Frank's criminal analyst skill increased, she assumed additional responsibilities at FCPS. *Id.* at ¶49. As a result, and with the support of her then-supervisor, Ms. Frank began the process of reclassifying her position from crime analyst to "senior management analyst." *Id.* at ¶52. Reclassification is necessary under the City's policies when the responsibilities of one's position substantively change. *Id.* at ¶¶52–53. Although this supervisor was unable to complete the reclassification process with Ms. Frank, he encouraged her to continue reclassification with her next supervisor. *Id.* at ¶55.

Prior to becoming Ms. Frank's supervisor, Mr. Schiager and Ms. Frank had a contentious relationship. Ms. Frank believes that he marginalized her work efforts and treated her disrespectfully. *Id.* at ¶59. Specifically, in 2011 Mr. Schiager attempted to take credit for Ms. Frank's monthly management report, and when Ms. Frank refused to let him do so, Mr. Schiager began treating her "with disdain." *Id.* at ¶¶60–62. Mr. Schiager also directed Ms. Frank to perform tasks that compromised her professional integrity, including asking her to research police calls from a private residence that Darin Atteberry, the Fort Collins City Manager, was interested in purchasing. *Id.* at ¶63. Ms. Frank did not have the authority to release this information because the property was outside of the department's jurisdiction. *Id*. Additionally, at a department training, Mr. Schiager filed a complaint with Ms. Frank's supervisor after she failed to invite another female attendee to lunch, accusing her of engaging in "'Jr. high behavior." *Id.* at ¶65. Apparently, there were several male attendees at the training that could

have, but did not, invite the other female attendee to lunch, but Mr. Schiager did not file complaints with any of their supervisors. *Id.* at ¶66.

Mr. Schiager also took away professional responsibilities involving a staffing, workload and redistricting study from Ms. Frank and assigned that project to "one of his male friends who had no previous experience." *Id.* at ¶67. Subsequently, when Ms. Frank vocalized objections, Mr. Schiager accused her of showing a "lack of support" for the workplace study. *Id.* at ¶¶70–71. In response, Ms. Frank formally complained to then Chief of Police John Hutto, who issued Mr. Schiager a "letter of reprimand" in May 2014 for his accusations against Ms. Frank. *Id.* at ¶¶73–74.

In November 2015 Mr. Schiager was appointed Ms. Frank's direct supervisor. *Id.* at ¶57. Following Mr. Schiager's appointment as her supervisor, Ms. Frank formally complained to Mr. Hutto about Mr. Schiager's "demeaning" treatment of her and voiced concerns that he was retaliating against her because of the letter of reprimand he received from Mr. Hutto. *Id.* at ¶76. In this complaint Ms. Frank asserted that Mr. Schiager was removing her job responsibilities and reassigning them to a male employee, and that his treatment of her caused the workplace to be "uncomfortable, hostile, and intimidating." *Id.* at ¶¶77, 80. She also voiced concerns that Mr. Schiager would oppose the reclassification process underway for her position. *Id.* at ¶78. Subsequently, Mr. Schiager told human resources that Ms. Frank's job description was adequate for her position, and that she lacked the competency to satisfy her current job description, effectively halting her reclassification efforts. *Id.* at ¶81.

In May 2016 Mr. Schiager issued Ms. Frank her performance review for the first quarter of 2016. In it he indicated that Ms. Frank "had room for improvement'" and that her work was of "very poor quality" and "did not represent good analysis work." *Id.* at ¶¶82–83. Mr. Schiager

again stated that Ms. Frank's job title and description would not change.  *Id.* at ¶84.  Ms. Frank

felt these comments were unfounded and retaliatory because she had been on track with her

previous supervisor to reclassify her job, and she had the support of her previous Assistant Chief

in doing so.  *Id.* at ¶¶85–86.

In June 2016 Mr. Schiager hired Erik Martin, a male, as a Financial Analyst for FCPS.

*Id.* at ¶88.  Mr. Martin and Ms. Frank were the only two analysts supervised by Mr. Schiager,

were equally positioned on the organizational chart, performed substantially similar types of

analytical work, and were subject to the same performance standards."  *Id.* at ¶¶90–92.  At the

time Mr. Martin joined FCPS Ms. Frank had been an employee for 17 years.  *Id.* at ¶93.

However, Mr. Martin's starting salary was approximately $1,500 more than Ms. Frank's salary

at the time he was hired.  *Id.* at ¶¶94–95.

On August 4, 2016 Mr. Hutto sent a departmental email addressing FCPS employees'

concerns about workplace discrimination and expressing his commitment to take such concerns

seriously.  *Id.* at ¶97.  In response, Ms. Frank sent another complaint about Mr. Schiager's

conduct to Mr. Hutto; this complaint subsequently became part of the department's newly

initiated investigation into workplace discrimination.  *Id.* at ¶¶105–06.  During this investigation,

Ms. Frank received another negative performance review from Mr. Schiager and was excluded

from workplace meetings and events by both Mr. Schiager and Mr. Hutto.  *Id.* at ¶¶107, 113.  On

November 21, 2016 human resources representative Lori Greening sent Ms. Frank a

memorandum indicating that she had concluded the investigation against Mr. Schiager and

determined that Ms. Frank was not retaliated against based on a protected class or for any other

improper reasons.  *Id.* at ¶132.  The next day Mr. Schiager placed Ms. Frank on a 90-day

performance improvement plan ("PIP") because of her "'consistent pattern of errors in reporting

data and a lack of analysis.'" *Id.* at ¶¶123–24. The PIP imposed an error-free standard on Ms. Frank and had the potential to render her ineligible for certain pay increases. *Id.* at ¶¶120, 125. This error-free standard was not imposed on any male employee directly supervised by Mr. Schiager, and errors of similar magnitude made by these employees, including Mr. Martin, went undisciplined. *Id.* at ¶¶125, 130, 136.

Ms. Frank then sent another complaint about Mr. Schiager through her then-attorney on November 30, 2016. *Id.* at ¶133. In it, she referred to her negative performance reviews and her placement on the PIP. *Id.* On December 22, 2016 Mr. Schiager and Ms. Frank had a conversation in which he told her that although others had made errors, he had not lost confidence in their performance. *Id.* at ¶135. At this time Ms. Frank had an error rate of less than one-one thousandth of a percent. *Id.*

On January 1, 2017 annual pay raises were issued to FCPS employees, including Mr. Martin. ¶¶ 142, 144. However, Ms. Frank did not receive a raise. *Id.* at ¶¶143. She was informed by Mr. Schiager on January 6, 2017 that her raise was contingent on resolving the PIP on its end date of February 15, 2017. *Id.* at ¶139. Beginning in January 12, 2017 Mr. Schiager began convening staff meetings that excluded only Ms. Frank, although she had been a part of such meetings in the past. *Id.* at ¶¶140, 148, 149. On January 17, 2017 Ms. Frank learned that there would be an administrative investigation into her allegations that Mr. Schiager was engaging in "harassment, targeting and retaliation." *Id.* at ¶147. On February 7, 2017, Mr. Schiager was placed on administrative leave, and Greg Yeager became Ms. Frank's temporary supervisor. *Id.* at ¶150.

As of February 15, 2017 Ms. Frank had completed all the requirements identified in the PIP. *Id.* at ¶154. Mr. Yeager gave her a positive first quarter performance review in 2017. He

indicated that Deputy Chiefs Haywoood and Trobley had reported receiving timely and accurate reports from Ms. Frank when requested, that she was "outperforming," that she "positively helped with several projects and teams in need," and that he had received feedback from a manager complimenting Ms. Frank's work. In July 2017 Jerry Kinsman gave her a second quarter performance review that rated her as outperforming or on track in all areas, stating that she "is often looked to for expert advice, strategic work and ongoing project work within the scope of her role as a crime analyst." *Id.* at ¶167.

In May 2017 Terry Jones became the interim police chief when Mr. Hutto retired. He sent Ms. Frank a memo on July 27, 2017 indicating that he found Ms. Frank's complaints against Mr. Schiager to be unfounded. *Id.* at ¶168. Mr. Schiager was demoted the same day. Ms. Frank believes this demotion was related to his adverse treatment of her and other department employees, although Mr. Schiager sent a departmentwide email expressing that his downgrade in rank was not because of the investigation against him. *Id.* at ¶171, 172–74. One other employee expressed concerns about Mr. Schiager's "unethical behavior" related to his disparate treatment of women. *Id.* at ¶¶ 177–79. A different female employee made complaints related to gender-motivated disparate treatment inside the department and ultimately resigned her position because of this treatment. *Id.* at ¶¶193–94. In this time, Mr. Martin continued to be assigned responsibilities that previously belonged to Ms. Frank, and was approved for leadership development training although Ms. Frank's requests were denied. *Id.* at ¶¶175, 181.

In early 2018 the City conducted a "Job Architecture" to categorize city jobs based on the knowledge, skills and experience required to perform each to ensure that similarly situated jobs were leveled in the same way. *Id.* at ¶196. Mr. Jones was the final decisionmaker on how positions were categorized within FCPS. *Id.* at ¶200. Ms. Frank's position as a crime analyst

was classified as an "administrative" role while Mr. Martin's role was classified as "professional." The administrative category has a lower pay scale than the professional category. *Id.* at 204–05. Ms. Frank believed that she should have been placed in the "professional" category, which was paid at a "P3" or "P4" salary range for many reasons. *Id.* at ¶¶214–16. The definition of the "professional" category included "developing solutions requiring analysis and research. Responsible for critical work and/or complex projects within a technical context." *Id.* at ¶207. Ms. Frank believes this definition described her work as a crime analyst. *Id.* at ¶208. Moreover, the sample job titles given for the professional category included "analyst," and of all the positions in the city with the title of "analyst," crime analyst was the only position not placed in the professional category. *Id.* at ¶¶209–10. The role of crime analyst requires a college degree and analytical skill although jobs in the "administrative" category require only a high school diploma. *Id.* at ¶¶212, 220. There are only two crime analysts employed by the City – both were categorized as "administrative," and both are women. *Id.* at ¶220. The only positions in the FCPS that were placed into the "professional" category are held by men. *Id.* at ¶224.

On December 13, 2017 Ms. Frank filed a Charge of Discrimination with the Colorado Civil Rights Division and the EEOC complaining of gender discrimination and retaliation for engaging in protected activity. *Id.* at ¶182. On April 6, 2018, after learning that her position was not designated as "professional," Ms. Frank amended her charge to include this event.

Ms. Frank filed her Complaint in this Court on December 14, 2018. ECF No. 2. She brought a total of eight claims. The first seven claims are against the City: (1) Title VII gender discrimination (2) Colorado Anti-Discrimination Act gender discrimination (3) Title VII retaliation (4) Colorado Anti-Discrimination Act retaliation (5) Age Discrimination in

Employment Act (6) Colorado Anti-Discrimination Act age discrimination, and (7) Equal Pay Act. The eighth cause of action is a Fourteenth Amendment Equal Protection Clause claim brought under 42 U.S.C. §1983 against Mr. Schiager and Mr. Jones in their individual capacities. Mr. Schiager moved to dismiss the only claim against him. ECF No. 20. Ms. Frank filed a response, ECF No. 23, and Mr. Schiager a reply, ECF No. 26. The City and Mr. Jones moved to dismiss claims five, six, and eight, ECF No. 23, Ms. Frank responded, ECF No. 24, and the two defendants replied, ECF No. 25. Both motions have been fully briefed and are now ripe for review.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## III. ANALYSIS

Mr. Schiager raises three arguments for dismissal of plaintiff's § 1983 claim under Rule 12(b)(6): (1) plaintiff's claim is barred by the statute of limitations; (2) plaintiff is effectively pursuing an unactionable "class-of-one" equal protection claim; and (3) he is shielded from liability by qualified immunity. Fort Collins and Mr. Jones argue that (1) plaintiff's §1983 claim

against Fort Collins is time-barred (2) plaintiff's §1983 equal protection claim against Mr. Jones is effectively an unactionable "class-of-one" equal protection claim; (3) plaintiff fails to state an equal protection claim; (4) plaintiff fails to state a claim for age discrimination under federal and state law; and (5) Mr. Jones is entitled to qualified immunity. Because the arguments overlap significantly, I will address the motions together.

## A. **Statute of Limitations.**

A statute of limitations defense may be resolved on a motion to dismiss where application of the limitations period is apparent on the face of the complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008). "Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinated tolling rules . . . ." *Hardin v. Straub*, 490 U.S. 536, 539 (1989). The statute of limitations for § 1983 actions in Colorado is that for Colorado personal injury suits - two years from the time that the cause of action accrued. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (citing *Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993)). Federal law, however, governs the issue of when a cause of action accrues. A § 1983 action "accrues when facts that would support a cause of action are or should be apparent." *Id.* (citing *Fratus v. DeLand*, 49 F.3d 673, 674-75 (10th Cir. 1995)).

Plaintiff filed her complaint on December 14, 2018. Accordingly, defendants argue that plaintiff's § 1983 claim is barred to the extent it relies upon a cause of action that accrued prior December 14, 2016. Although the City argues that plaintiff's § 1983 claim against it is time-barred, ECF No. 22 at 4, plaintiff responds that she is not pursuing a § 1983 claim against the City, ECF No. 24 at 1, and thus this argument is moot. In its reply, the City argues for the first time that Ms. Frank's age discrimination claims are also time-barred. ECF No. 22 at 1. However, out of fairness to the responding party, I will not consider an argument raised for the

first time in a reply brief. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). Thus, the only remaining timeliness issue is whether the statute of limitations bars plaintiff's § 1983 claim against Mr. Schiager.

The complaint discusses the following events as occurring prior to December 14, 2016: (1) Mr. Schiager's treatment of Ms. Frank prior to becoming her supervisor, including attempting to take credit for her work, directing her to perform tasks that compromised her professional integrity, and complaining to her manager about the lunch invitation incident, *id.* at ¶¶61–66; (2) Mr. Schiager's interference with Ms. Frank's reclassification upon becoming her direct supervisor in November 2015, *id.* at ¶81; (3) Mr. Schiager's first and second quarter 2016 performance reviews of Ms. Frank, *id.* at ¶¶82, 107; (4) Mr. Schiager's hiring of Mr. Martin with a higher salary than Ms. Frank despite his lessor experience for a similar role, *id.* at 88–96; (5) Mr. Schiager's placement of Ms. Frank on a PIP without treating a similarly situated male employees similarly, *id.* at ¶¶119–31, (5) Mr. Schiager's treatment of Ms. Frank during the ongoing investigations into Mr. Schiager's behavior in 2016, including his exclusion of her from work events and his reassigning of her work responsibilities. *Id.* at ¶¶111–13.

Plaintiff argues that although these events occurred prior to the statutory period, her claims did not accrue until after December 14, 2016. She clarifies in her response to Mr. Schiager's motion that her claims are based on the pay differential between her and Mr. Martin, the disciplinary actions taken against her, and Mr. Schiager's failure to award her a pay raise as compared to Mr. Martin. The other allegations related to Mr. Schiager's treatment of her are intended to serve as "background information" and "not the basis of her equal protection claim." ECF No. 23 at 4. Accordingly, I will focus on the allegations of discriminatory pay, disparate disciplinary actions and the resulting absence of a pay raise. Because the accrual of a claim is

generally a fact intensive inquiry, a statute of limitations defense may only be resolved at this stage if the claim's accrual date is obvious from the allegations in the complaint. *Dummar*, 543 F.3d at 619.

First, plaintiff argues that at the time Mr. Martin was hired, she did not know his salary, and thus to the extent that her equal protection claim against Mr. Schiager rests on disparate pay, it is not time-barred. I agree that it is not evident from the face of the complaint when Ms. Frank should have known that she was receiving disparate pay, and thus these allegations cannot be excluded at the motion to dismiss stage.

Second, although plaintiff acknowledges that Mr. Schiager placed her on the performance improvement plan (PIP) on November 16, 2016, she argues that she did not have reason to know that others were being treated more favorably than her until December 22, 2016, when Mr. Schiager told her that he was treating others more favorably. ECF No. 23 at 3 (referring to ECF No. 2 at ¶135). However, there are several allegations that lead me to conclude that Ms. Frank knew she was allegedly subject to disparate disciplinary treatment prior to December 14, 2016. For one, on November 30, 2016, after receiving a poor third quarter review, she submitted a complaint to the City through her attorney regarding Mr. Schiager's treatment of her including the performance reviews and her placement on the PIP. ECF No. 2. at ¶¶ 119, 123, 132–134. Ms. Frank did that after Ms. Greening notified her that she had concluded her investigation and determined that Ms. Frank was not retaliated against based on a protected class or for other improper reasons. ECF No. 2 at ¶132. Given Ms. Frank's complaints of disparate treatment and her participation in the investigation in this time period, I must disagree with plaintiff. Ms. Frank's § 1983 claim against Mr. Schiager is time-barred to the extent her allegations of disparate disciplinary actions rest on events that occurred before December 14, 2016.

However, Mr. Schiager argues in his motion that the statute of limitations also bars plaintiff's claim for events that occurred after December 14, 2016.  ECF No. 20 at ¶¶14–18.  He argues that allegations occurring during this period merely provide additional information on claims that accrued prior to December 14, 2016.  I disagree with defendant – plaintiff's complaint alleges several instances of discriminatory treatment within the statutory period that are discrete from the actions alleged prior to December 14, 2016.  Within the statutory period, she alleges that Mr. Schiager placed an unrealistic error rate on her work without doing so to a male colleague who made errors (and while allegedly acknowledging that he was treating Ms. Frank differently), ECF No. 2 at ¶¶135-37; that she did not receive the pay raise she would have received absent the PIP,  *id.* at ¶¶139, 142–143; and that Mr. Schiager treated her differently by excluding her from staff meetings, *id.* at ¶¶140–41, 149–49.  These are discrete acts that occurred within the statutory period and that can support her equal protection claim.

Lastly, although not concerning the statute of limitations, Mr. Schiager argues that he could not be liable for any constitutional violation since February 7, 2017, because he was placed on administrative leave on that date, and there are no allegations that he ever again served as Ms. Franks' supervisor subsequently.  ECF No. 20 at 8.   Plaintiff agrees, ECF No. 23 at 4, and this argument is moot.

**B.  "Class of One" Claim.**

In both motions, defendants argue that plaintiff is effectively pursuing an unactionable "class-of-one" claim because plaintiff failed to plead sufficient class-based allegations to form a plausible gender discrimination claim against defendant.  ECF No. 20 at ¶¶22, 27–32.  Plaintiff counters that she is not pursuing a class-of-one equal protection claim.  ECF No. 23 at 4.

The Fourteenth Amendment's Equal Protection Clause protects "every person within the state's jurisdiction [from] intentional and arbitrary discrimination . . . occasioned by . . . [the state's] duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918). Class-of-one claims occur "where the plaintiff did not allege membership in a class or group," and such claims are successful when the plaintiff can show intentional disparate treatment without a rational basis. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that a homeowner could assert an equal protection claim as a class of one against a village that demanded a 33-foot easement to connect her property to municipal water supply). The Supreme Court has held that class-of-one claims cannot be maintained by public employees against their employers because public employers must make "individualized, subjective personnel decisions" to efficiently discharge governmental duties. *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 607 (2008) (dismissing class-of-one claim where plaintiff alleged that she was fired "not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for arbitrary, vindictive, and malicious reasons."). Defendants argue that plaintiff is pursuing a class-of-one claim. I disagree – in defining "class-of-one" claims, *Enquist* specifically distinguishes those from equal protection claims for sex discrimination. Ms. Frank is pursuing a claim based on her membership in an identified class – discrimination because she is a woman.

### C. Claims Five and Six - Age Discrimination Against the City

The City moves to dismiss claims five and six, Ms. Frank's claims under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Colorado Anti-Discrimination Act ("CADA") for failure to state a claim. The ADEA makes it unlawful for an employer to discharge an employee because of her age. 29 U.S.C. § 623(a)(1). To establish a claim under

ADEA, Ms. Frank must plausibly allege "that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009). Age must be "the factor that made a difference," but it need not be the sole motivating factor. *Jones v. Okla. Cty. Pub. Schs.*, 617 F.3d 1273, 1277–78 (10th Cir. 2010).

To prevail on her discrimination claims, plaintiff may proceed by either of two general methods. *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). She may attempt to meet her burden directly by presenting evidence that age was a determining factor in her discharge. *Id.* Or, as here, where plaintiff does not have direct evidence of age discrimination, she may rely on the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Although the *McDonnell Douglas* framework emerged in the context of Title VII, the Tenth Circuit applies it to ADEA claims. *Id.*

Under the CADA "it shall be a discriminatory or unfair employment practice (f)or an employer . . . to discriminate in matters of compensation, terms, conditions, or privileges of employment against any person other qualified because of . . . age." Colo. Rev. Stat. § 24-32-402. The same general legal standards apply to age discrimination claims whether brought under CADA or under the ADEA. *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1197–98 (Colo. App. 1997) ("As relevant here, the federal counterpart to the Colorado Anti–Discrimination Act is the [ADEA] . . . ADEA, as does [CADA], prohibits the discharge of an individual based on age."). Colorado has adopted the *McDonnell Douglas* framework to analyze CADA claims. *Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 297 (Colo. 2000).

The first step in *McDonnell Douglas* requires plaintiff to establish a prima facie case of discrimination.[1] *Id.* To properly state a claim under the ADEA, Ms. Frank must allege that (1) she belongs to a protected class, defined by the ADEA to be over the age of 40; (2) she suffered an adverse employment decision; (3) was otherwise qualified for the position or doing satisfactory work, and (4) she was treated less favorably than others not in the protected class. *Jones v. Oklahoma City Pub. Sch.,* 617 F.3d 1273, 1279 (10th Cir. 2010) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). If the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. Once the employer meets the burden, the plaintiff then must establish that the employer's proffered reasons were only pretext for discrimination. *Id.* at 1278.

In its motion, the City does not dispute that Ms. Frank has pled the first element, she is part of the protected class, and the third element, she suffered an adverse employment decision when she was subject to a performance improvement plan that prevented her from obtaining a raise and her job was classified as "administrative" as opposed to "professional," affecting her pay range. The City does dispute that Ms. Frank was performing her job satisfactorily. However, I find that Ms. Frank has plausibly pled that she was doing satisfactory work. *See, e.g.*, ECF No. 2 at ¶128 (positive performance reviews prior to Mr. Schiager becoming her supervisor), ¶131 (Ms. Frank's 99.99% accuracy rate), ¶154 (successfully completed all requirements in PIP), ¶¶156–58 (positive first quarter 2017 performance review from supervisor who replaced Mr. Schiager), ¶167 (positive second quarter 2017 performance review).

---

[1] It is well established that plaintiff is not required to establish a prima facie case of discrimination in her complaint to survive a motion to dismiss. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). However, the elements of a cause of action help guide the Court in determining whether plaintiff has set forth a plausible claim. *Id.*

However, whether Ms. Frank adequately pled that her age affected any adverse employment decision is a closer call. Ms. Frank alleges that her position was classified as administrative rather than professional "because of her gender," *id.* at ¶255, and that "male analysts, including Martin, were classified as 'professional,'" *id.* at ¶256. At no point in her complaint does she connect Mr. Schiager or Mr. Jones's alleged disparate treatment of her to her age, as opposed to her gender. And while she discusses at length the Department's "systemic culture of discrimination against women," *id.* at ¶¶ 17, 28, 180, she makes no similar allegations of a culture of discrimination against older employees. Although such allegations are unnecessary to make a plausible age discrimination claim, the dearth of any such allegations stands in stark contrast to her gender discrimination claim.

Ms. Frank makes the following allegations concerning her age:

> Crime Analyst Frank was subjected to adverse treatment based on her age, including but not limited to written reprimands, overly critical performance evaluations, placing her on the PIP, reduced pay, pay disparity, and denial of reclassification of her position as well as improper classification of her position based on her age, as detailed above.

*Id.* at ¶258. She further alleges "FCPS . . . has unlawfully denied Crime Analyst Frank the benefits, privileges, promotional opportunities, and terms and conditions of her employment due to her age." *Id.* at ¶257. These are the only instance of her connecting any employment events to her age. But the allegations that she "was subjected to adverse treatment based on her age" or that her employment was affected "due to her age," standing alone, are conclusory. Thus, they are not entitled to be accepted as true. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

Ms. Frank offers the following nonconclusory allegations to show that the City's adverse employment actions were related to her age: "Crime Analyst Frank's date of birth is August 29,

1967 and, as such, is a member of a class of citizens protected by the Age Discrimination in Employment Act;" *id.* at ¶249, "Crime Analyst Frank was paid less than her male co-worker, Martin, who performed substantially similar work;" *Id.* at ¶251, "Martin was born on June 11, 1987;" *id.* at ¶ 254, and "FCPS denied Crime Analyst Frank a raise." *id.* at ¶254. These allegations are insufficient to tie Ms. Frank's denial of a pay raise or classification as an administrative employee to her age. *See Khalik v. United Air Lines*, 671 F.3d at 1193 ("While specific facts are not necessary, some facts are.") (internal quotation and citation omitted)). Accordingly, I grant the City's motion to dismiss claims five and six.

### D. **Qualified Immunity.**

Finally, defendants Schiager and Jones argue that they are entitled to qualified immunity. Qualified immunity protects government officials acting in their official capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of violation. *Pearson v. Callahan*, 555 U.S. 223, 232, (2009). Because prong one is equivalent to determining whether plaintiff has sufficiently alleged her equal protection claim, I will address defendant Jones's argument that plaintiff fails to state her equal protection claim in the context of qualified immunity.

When a defendant asserts qualified immunity, the burden shifts the plaintiff to establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). However, a court determining whether defendant violated a constitutional right at the

motion to dismiss stage must view all reasonable inferences in favor of the plaintiff and liberally construe the complaint. *Ruiz v. McDonnell*, 299 F. 3d 1173, 1181 (10th Cir. 2002).

    1.  <u>Defendant Schiager</u>

The equal protection clause requires that no state "deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, §1. It "prohibits state and local governments from treating similarly situated persons differently." *Rector v. City & Cty. Of Denver*, 348 F. 3d 935, 949 (10th Cir. 2003). "[T]he *McDonnell Douglas* burden-shifting framework applies to equal-protection claims in the employment context." *Ney v. City of Hoisington*, 264 Fed. App'x 678, 684 (10th Cir. 2008) (unpublished). However, as discussed previously, *McDonnell Douglas's* prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). At the motion to dismiss stage, plaintiff need only plead a plausible gender discrimination claim, although the elements of a prima facie case help the Court determine whether she has done so.

The Tenth Circuit has recognized that the prima facie case required to support a claim of gender discrimination under the Equal Protection Clause varies based on the context and nature of the facts. *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 934 (10th Cir. 2015) (unpublished) (citing *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (discussing varying standards for prima facie case in Title VII context)). Mr. Schiager does not offer any standard by which to evaluate plaintiff's equal protection claim. Instead he argues that the plaintiff's claim cannot be maintained because she does not allege any actions were taken against other female employees. However, he cites no case requiring a gender discrimination claim to include such allegations, and to the extent this is a "class-of-one" argument, I explained why it is without merit *infra* section B.

Nonetheless, the "central focus of the inquiry" in any employment discrimination case "is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Thus, Ms. Frank must plausibly plead that "she was treated differently than similarly situated employees" to state an equal protection claim. *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 935 (10th Cir. 2015). The Tenth Circuit often applies law from the Title VII context to determine whether plaintiff has sufficiently pled an equal protection violation for discrimination by a public employer. *See, e.g.*, *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1283 (10th Cir. 2003); *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (noting that although plaintiff's Title VII and §1983 equal protection claims "rest on separate legal foundations, we review the sufficiency of his evidence of intentional discrimination for each under the *McDonnell Douglas* standard" and analyzing the prima facie case for the claims together). Other circuits do the same. *See, e.g.*, *Glenn v. Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011) (analyzing equal protection claim for gender discrimination using Title VII case law on how a plaintiff may demonstrate discriminatory intent).

In the Title VII context, the Tenth Circuit has noted that although the elements of a prima facie inquiry may vary based on context, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (internal quotation marks and citation omitted).

With this standard in mind, I find that at this early stage of the case, plaintiff has sufficiently alleged an equal protection claim against Mr. Schiager. She has plausibly pled that she was treated differently than a similarly situated male employee, Mr. Martin, and that Mr.

Schiager took adverse employment actions against her under circumstances which permit an inference of unlawful discrimination. These allegations include:

- Mr. Martin and Ms. Frank were the only two analysts supervised by Mr. Schiager; they were equals on the organizational chart; they performed substantially the same type of analytical work in their respective areas of expertise; they were subject to the same performance, evaluation and disciplinary standards. ECF No. 2 at ¶¶89–92.

- Despite the fact that Ms. Frank had 17 years of experience in her role with FCPS, Mr. Schiager hired Mr. Martin with a starting salary that was higher than Ms. Frank's salary. *Id.* at ¶95.

- Prior to becoming Ms. Frank's supervisor, Mr. Schiager filed complaints against her, took credit for her work, and removed her work responsibilities in circumstances that permit an inference that the conduct was gender-motivated.[2] *Id.* at ¶¶60–63, 65–67, 70–71.

- Mr. Schiager was holding Ms. Frank to an error rate and standard that he did not hold his male subordinates to, and he admitted to Ms. Frank on December 22, 2016 that he was treating her errors differently than those made by his other subordinates. *Id.* at ¶135.

- Mr. Schiager kept Ms. Frank on a performance improvement plan but did not negatively evaluate Mr. Martin or place him on a performance improvement plan for errors he made. *Id.* at ¶¶136–37.

---

[2] Although plaintiff may not rely upon events that occurred before December 14, 2016 to state her claim, she is not barred from referring to these time-barred events as background evidence to support a timely claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (in the context of Title VII claim).

- In January 2017 Mr. Schiager awarded an annual pay raise to FCPS employees including Mr. Martin but did not award an annual raise to Ms. Frank. *Id.* at ¶¶142–44.

- Mr. Schiager excluded Ms. Frank from workplace meetings while inviting all of his other direct reports. *Id.* at ¶¶140–41, 148–49.

- Mr. Schiager interfered with Ms. Frank's work performance by writing her up for minor incidents while not disciplining men under his supervision for similar behavior. *Id.* at ¶127.

- Other FCPS employees complained about Mr. Schiager's disparate treatment of women. *Id.* at ¶¶ 177–79.

Having concluded that Ms. Frank has adequately pled that Mr. Schieger discriminated against her based on her gender, I have little trouble concluding that the right to be free from gender discrimination is clearly established in the law. *See, e.g.*, *United States v. Virginia*, 518 U.S. 515 (1996) ("Today's skeptical scrutiny of official action denying rights or opportunities based on sex responds to volumes of history. As a plurality of this Court acknowledged a generation ago, our Nation has had a long and unfortunate history of sex discrimination." (internal citation and quotation omitted)). And these equal protection guarantees extend to the context of public employment. The Tenth Circuit has held that "the protection afforded by §1983 includes relief from discriminatory employment practices of public employers." *Poolaw v. City of Anadarko, Okl.*, 660 F.2d 459, 462 (10th Cir. 1981). In the context of a state corrections official treating Hispanic employees differently than similarly situated non-Hispanic employees in discipling, failing to promote, and negatively evaluating Hispanic employees, the Tenth Circuit also held in 2002 that "the law underlying plaintiffs' §1983 equal protection claim

was clearly established" at the time of defendant's discriminatory employment decisions. *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1244 (10th Cir. 2000). *See also Salguero v. City Of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004), *English v. Colorado Department of Corrections*, 248 F.3d 1002 (10th Cir. 2001) (recognizing that the equal protection clause encompasses race and gender discrimination in public employment but granting summary judgment to defendants on evidence presented). As such, at the motion to dismiss stage, I must deny Defendant Schiager's request for qualified immunity.

    2. <u>Defendant Jones.</u>

To determine whether plaintiff has also sufficiently pled an equal protection claim against defendant Jones, I must analyze which actions defendant Jones personally took against plaintiff, as opposed to the actions of the FCPS or Mr. Schiager. *Foote v. Spiegel*, 118 F.3d 1415, 1423 (10th Cir. 1997) (individual liability under § 1983 "must be based on personal involvement in the alleged constitutional violation."). As discussed previously, Ms. Frank has plausibly pled that she and Mr. Martin are similarly situated. However, I do not find that she has sufficiently alleged that Mr. Jones personally and intentionally discriminated against her based on her gender. *Sanaah v. Howell*, 384 Fed. App'x 737, 740 (10th Cir. 2010) ( Liability under § 1983 "must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant." (emphasis in the original) (quotation and citation omitted)). Ms. Frank makes the following allegations of Mr. Jones's personal involvement in the adverse employment actions against her:

- "During or around January or February 2018 Jones made the decision on the levels, titles and category placement of positions within FCPS as well as where each position was ultimately categorized." ECF No. 2 at ¶199.

- "Upon information and belief, Jones was the final decision maker on how positions were structured within FCPS." *Id.* at ¶200.

Ms. Frank alleges that the reclassification of her role occurred in circumstance that suggest gender discrimination. While these events may be relevant to her Title VII claim against the City in context with her other allegations, her allegations against Mr. Jones personally fall short. She does not allege that Mr. Jones deliberately discriminated against her based on gender. And the two paragraphs concerning Mr. Jones are insufficient upon which to make such an inference. Moreover, there are a number of allegations that weigh against taking the inferential step from Mr. Jones's supervisorial role over the reclassification process to intentional gender discrimination. For one, although Mr. Jones had expressed skepticism about Ms. Frank's complaints against Mr. Schiager, he nonetheless demoted Mr. Schiager, and Ms. Frank alleges that Mr. Schiager's demotion was related to his treatment of women in the workplace. ECF No. 2 at ¶¶ 168, 170–72. Following investigations into gender and race discrimination, Mr. Jones wrote a department-wide email acknowledging "long-standing problems" and committing the department to "the right direction" and "a much healthier path." *Id.* at ¶185. These allegations are not dispositive of the § 1983 claim against Mr. Jones. However, given the dearth of allegations as to his personal involvement, these additional facts make it more difficult for the Court to infer that Mr. Jones deliberately violated Ms. Frank's constitutional rights by intentionally discriminating against her. Accordingly, Ms. Frank's § 1983 claim against Mr. Jones is dismissed.

ORDER

Defendant Jerome Schiager's motion, ECF No. 20, is GRANTED IN PART and DENIED IN PART. It is granted to the extent that claim eight against Mr. Schiager rests on

disciplinary actions that occurred before December 14, 2016. It is denied otherwise. Defendants City of Fort Collins and Terrance Jones's motion, ECF No. 22, is GRANTED. Claims five and six against the City of Fort Collins are dismissed. Claim eight against defendant Terrance Jones is dismissed.

DATED this 20th day of August, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge